Rellie L. Maples and Wilma Maples v. Commissioner.
Maples v. Commissioner
Docket No. 2819-70.
United States Tax Court
T.C. Memo 1971-180; 1971 Tax Ct. Memo LEXIS 157; 30 T.C.M. (CCH) 760; T.C.M. (RIA) 71180; July 26, 1971, Filed. John A. Walker, Jr., 312 Park National Bank Bldg., Knoxville, Tenn., for the petitioners. John B. Harper, for the respondent. 761 DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $1,983.92 for 1966 and $10,020.82 for 1967. At issue is the fair market value of a 21.36-acre tract *158 of land, including improvements on part of the tract, donated by petitioners to the University of Tennessee on December 11, 1965. Findings of Fact Some of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. Rellie L. and Wilma Maples (herein called petitioners) are husband and wife, who resided in Gatlinburg, Tennessee, at the time they filed their petition in this proceeding. For the calendar years 1966 and 1967 petitioners filed their joint Federal income tax returns with the district director of internal revenue at Nashville, Tennessee. Rellie L. Maples (herein called petitioner) owns and operates a hotel in Gatlinburg, Tennessee, together with other commercial property. Because of its location near the Great Smoky Mountains National Park, Gatlinburg derives its revenues almost exclusively from tourists and vacation activities. In 1955 petitioner and a group of businessmen organized the Great Smoky Mountains Historical Association as a nonprofit organization to promote and sponsor a symphonic drama or historical pageant in Gatlinburg similar to the highly successful drama, "Unto These *159 Hills," in Cherokee, North Carolina. Petitioner and three other parties as incorporators secured a charter for the Association from the State of Tennessee on July 25, 1955. On December 2, 1955, petitioners purchased a suitable site for the amphitheater from Elmer J. Ogle. The purchase price of the land was $24,000. The land was transferred to petitioners subject to the rights, if any, vested in Flora Ogle by decree of divorce in the case of Elmer J. Ogle v. Flora Ogle, No. 4376 on the Rule Docket of the Sevier County, Tennessee, Chancery Court. The site contained 21.36 acres. The land is located at Hunter Hills off Highway 73, approximately 4.8 miles directly east of Gatlinburg, Tennessee. Highway 73 runs from Cosby, Tennessee, to Gatlinburg, Tennessee. Petitioner's corporation, the New Gatlinburg Inn, Inc., constructed an amphitheater on the property which was named the Hunter Hills Theater. The cost of constructing and equipping the amphitheater was $140,412.89. Neither the theater nor the land was ever owned by the Great Smoky Mountains Historical Association. The Great Smoky Mountains Historical Association presented a pageant entitled "Chucky Jack" during the tourist season *160 for four consecutive years, 1956 through 1959. In these years of operation the Association realized gross receipts and sustained net operating losses as follows: Net Operating
Year
Gross Receipts
Loss
1956
$ 71,664.00
$ 34,823.03
1957
60,878.00
29,741.07
1958
53,167.00
23,941.37
1959 50,269.00
13,822.53
$235,978.00
$102,328.00 The Association was liquidated in 1960. On February 10, 1964, petitioner, as lessor, executed a lease with the Union College of Barbourville, Kentucky, as lessee, for the Hunter Hills Theater, including the land, and an adjacent tract of land containing approximately 5 acres which is located between the Hunter Hills Theater tract and Highway 73. The lease contained a provision whereby the lessee had the right to purchase all of the property being let for a price of $250,000, less any rentals paid during the term of the lease. The option to purchase was placed in the lease at the request of the lessee, but the purchase price was set by the lessor. Although the lease contained an option for renewal for an additional year commencing March 10, 1965, the lease was not renewed. During the summer of 1964, Union College *161 presented grand operas and musical comedies at the theater. The college lost approximately $100,000 on the operation of the theater that summer. The loss was due, in part, to the fact that the college had inadequate time and inadequate funds to obtain sufficient publicity of its plays and to the fact that grand operas drew poor attendance. On December 11, 1965, petitioners transferred to the University of Tennessee, by warranty deed, the tract of land on which Hunter Hills Theater was located. The transfer was a gift. The land was conveyed subject to the rights, if any, vested in Flora Ogle by decree of divorce in the case of Elmer J. Ogle v. Flora Ogle, No. 4376 on the Rule Docket of the Sevier County, Tennessee, Chancery Court. On 762 the same date, the New Gatlinburg Inn, Inc., transferred by quitclaim deed the Hunter Hills Theater, with its stage, buildings, equipment, pavings, and other fixtures, used in connection with the theater, to the University of Tennessee. The land in which Flora Ogle received an interest by decree of divorce consists of a 9-acre tract. A portion of the 9-acre tract extends into the parking area of the Hunter Hills Theater. For use of this portion *162 of the tract, the University of Tennessee has paid Flora Ogle $300 per year beginning in 1965. The University is currently paying her an additional $120 per year rent for the use of a barn located on her 9-acre tract. The most recent payment received by Mrs. Ogle from the University was $420 in March 1971. If Mrs. Ogle had testified in this case, it would have been her testimony that she believed that she received a "homestead" in the property by virtue of the divorce decree. In the decree of divorce it was stated that Flora Ogle should "continue to reside on, cultivate and operate * * * [the 9-acre tract] so long as she lived in the house located on said property and maintained a home for the minor children of the parties." The youngest child of Elmer and Flora Ogle was 21 years old in April 1968. At the request of James E. Drinnon, Jr., Assistant General Counsel for the University of Tennessee, an appraisal of the Hunter Hills Theater property was made by David P. Waters, Waters Real Estate Company, of Sevierville, Tennessee, on April 11, 1966. In Mr. Waters' opinion the 21.36 acres were "worth $149,520." The appraisal was used for the purpose of setting a value for purchasing *163 a title insurance policy covering the property. The total appraised value of the property, including the amphitheater, buildings and equipment, was $274,520. On May 18, 1968, Harold Hayes, a Knoxville, Tennessee, real estate appraiser, appraised the Hunter Hills Theater property for petitioners. He appraised the fair market value of the 21.36 acres of land at $149,520, or $7,000 per acre, as of May 1, 1965. Hayes considered the use of the land as an outdoor theater site to be the highest and best use of the property. It was his opinion that the property could be easily developed into a residential subdivision. In his appraisal, Hayes selected three sales as bases for comparison in determining the fair market value of the theater tract. The first selection was land adjacent to the theater tract purchased by the Sevier County, Tennessee, Board of Education for the site of Gatlinburg-Pittman High School at $1,500 per acre in 1963. He further determined that in consideration of the cost of grading and site preparation of the two-acre plot, the value per acre of the school tract was $8,000. Water and gas were on the property. The second selection was Section A of Hidden Hills Subdivision, *164 developed in October 1966. The subdivision was located one-half mile west of the theater tract. Water and electricity were on the property. Hayes determined that lots sold for $4,000 each or $8,000 per acre. The third selection was 32 acres ("island campground" or "island property") located at the corner of Pittman Center Road and State Highway 73 that sold for $200,000 ($6,250 per acre) in 1964. The tract contained 1,217 feet fronting Highway 73 and 943.5 feet fronting Pittman Center Road. Water was on the property. In making his appraisal, Hayes assumed the legal title to the property to be good and he disregarded all existing liens and encumbrances. Lots in Hidden Hills Subdivision, Sections A and B, began selling on August 2, 1967. The selling prices of the lots ranged from $2,000 to $8,500 depending upon the size of the lot and the lay of the land. The lots ranged in size from approximately 4 acres to 1.2 acres. The "island property" or "island campground" (32 acres) is level land located on the Pigeon River. The island portion of the tract is bordered on two sides by a rocky stream. On November 25, 1970, Dick Whaley of Whaley Real Estate Company, Gatlinburg, Tennessee, wrote *165 a letter to Mr. James E. Hickman, petitioners' accountant, stating that he (Whaley) had made an appraisal of the Hunter Hills Theater tract without consideration of the improvements. Whaley stated that in his opinion the fair market value of the property was then $7,500 per acre. On August 20, 1969, P.D. Cate, Cate Realty Company, Inc., of Knoxville, Tennessee, made an appraisal at the request of respondent. Cate determined that the highest and best use of the theater tract was residential. Cate appraised the fair market value of the tract as of December 11, 1965, to be $31,750, computed as follows: 763 21.36 acres at $1,600 per acre
$34,176.00
Depreciated value of improvements on the Flora Ogle tract 2,887.40
Sub-total
$37,063.40
Less: Interest of Flora Ogle in 9 acres and improvements *
5,311.80
Fair market value of theater tract
$31,751.60
Rounded to: $31,750.00
*166 On petitioners' joint Federal income tax return for the taxable year 1965, petitioners claimed a deduction for contributions to charity, part of which was based on the gift of the Hunter Hills Theater tract to the University of Tennessee. For purposes of computing the deduction, the fair market value of the tract was claimed to be $149,520. Attached to petitioners' Federal income tax return for 1965 was the certificate of appraisal by David P. Waters. In his notice of deficiency the respondent determined that the fair market value of the Hunter Hills Theater tract was $32,040 on the date of the gift, December 11, 1965, in lieu of $149,520 reported in petitioners' 1965 Federal income tax return. Because deductions for contributions were limited to 30 percent of adjusted gross income under section 170(b)(1)(A) and (B) of the Internal Revenue Code of 1954, petitioners' deduction for contributions in the year 1965 was $20,325.31. The remaining portion of the $149,520 was carried over by petitioners to their 1966 and 1967 Federal income tax returns. Respondent's determination that the fair market value of the property was $32,040 resulted in asserted deficiencies for the years 1966 *167 and 1967 because the contribution carryovers from 1965 claimed by petitioners were reduced to reflect respondent's determination of the fair market value. At trial and on brief, respondent asserts that the fair market value of the Hunter Hills Theater tract on December 11, 1965, was $35,250. The revised figure reflects respondent's recognition that grading done to the theater tract to provide an entrance to Highway 73 should have been considered in determining the fair market value of the property. The value of the grading was $3,500. Ultimate Finding The fair market value of the Hunter Hills Theater tract (21.36 acres, plus improvements on a 9-acre parcel thereon) was $130,000 on December 11, 1965. Opinion The parties agree that the University of Tennessee is a qualified organization within the purview of section 170(c), Internal Revenue Code of 1954. The only dispute relates to the fair market value of petitioners' contribution of the partially developed 21.36 acres of land on December 11, 1965, when they gave it to the University of Tennessee. Section 1.170-1(c) (1), Income Tax Regs., provides in part: If a contribution is made in property other *168 than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. Petitioners contend that the fair market value of property on December 11, 1965, was $149,520; and respondent contends that its value on that date was only $35,250. The question as to fair market value is, of course, one of fact. While we might marshal and discuss at length the substantial evidence presented by the experts on both sides, it is our view that such an effort would be without purpose. Extended discussions of factual materials, pro and con, terminating in a conclusion that is based in the last analysis upon a subjective judgment about the weight of the various materials considered, often gives merely the illusion of a process of reasoning, when in fact the result reached is simply the trial court's ultimate finding of fact on the record as a whole. The Court of Appeals for the Second Circuit said in Colonial Fabrics v. Commissioner, 202 F. 2d 105 *169 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court: Finding market value is, after all, something for judgment, experience, and reason on the part of the trier, and does not lend itself to dissection and separate evaluation. Suffice it to say that we have considered all the evidence presented, including opinion testimony, comparable sales, and the 764 income-producing ability of the property in question. We have concluded and found as a fact that the fair market value of the property donated by petitioners to the University of Tennessee was $130,000 on December 11, 1965. To reflect this finding and conclusion, Decision will be entered under Rule 50. Footnotes
*. In estimating Flora Ogle's interest, Cate assumed that the 9 acres and improvements were worth $600 per year to her as a place to live. The $600 was discounted at 6 percent per year for 13 years (life expectancy of Flora Ogle from 1965), using the "Inwood Table of 1 per annum."↩